**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**TISHA PARRILLO,**

    **Plaintiff,**

**-vs-**                 **Case No. 6:12-cv-1551-Orl-DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

_____

# Memorandum Opinion & Order

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **REVERSED and REMANDED.**

## I. BACKGROUND

### A. Procedural History

Plaintiff filed for SSI benefits on May 12, 2011, alleging an onset of disability on September 1, 2000, due to schizophrenia, neuropathy, diabetes, depression, auditory and visual hallucinations, panic attacks, bipolar disorder, back problems, and insomnia. R. 31-32, 152. Her application was

denied initially and upon reconsideration. R. 65, 82. Plaintiff requested a hearing, which was held on May 31, 2012, before Administrative Law Judge Pamela Houston (hereinafter referred to as "ALJ"). R. 26-107. In a decision dated June 14, 2012, the ALJ found Plaintiff not disabled as defined under the Act through the date of her decision. R. 7-19. Plaintiff timely filed a Request for Review of the ALJ's decision, which the Appeals Council denied on August 14, 2012. R. 1. Plaintiff filed this action for judicial review on October 15, 2012. Doc. 1.

### B.     Medical History and Findings Summary

Plaintiff was born on September 16, 1969, and, as such, was 41 years old, or a "younger individual", when she filed her application for benefits. R. 29, 152. Plaintiff has a high school education and worked as a ticket seller, packer, and billing clerk. R.17, 31.

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of bipolar disorder, depression, neuropathy, panic disorder, obsessive compulsive disorder, diabetes, anxiety, memory loss, chest pain, back problems, hallucinations, and insomnia. R. 31, 186, 275. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered severe impairments of bipolar disorder, depressive disorder, tobacco abuse and obesity, which were "severe" medically determinable impairments, but were not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 13-14. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform light work, except she should avoid climbing ladders, ropes and scaffolds; should avoid concentrated exposure to temperature extremes, vibrations and avoid working with dangerous moving machinery and at heights; should generally work alone at her own workstation with no more than superficial communication with coworkers, supervisors and the public; and should perform one to five step tasks that can be learned through a simple on the job demonstration or within

30 days, which tasks should be performed generally the same way on in similar manner each time. R. 18-19.

Based upon Plaintiff's RFC, the ALJ determined that she could not perform past relevant work. R. 17. Considering Plaintiff's vocational profile and RFC, the ALJ applied the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and, based on the testimony of the vocational expert ("VE"), the ALJ concluded that Plaintiff could perform work existing in significant numbers in the national economy as a retail marker, assembly line worker, and mail sorter. R. 18. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 19.

Plaintiff now asserts two points of error. First, she argues that the ALJ erred by not weighing all of the medical evidence, including records from Park Place finding that Plaintiff was incoherent, had low cognitive performance and was bipolar with psychotic features. Second, she contends the ALJ erred by finding she had the RFC to perform light work contrary to the opinion of the consultative examining psychologist, Dr. Jean, and based on the opinion of the state agency psychologist Dr. Green. For the reasons that follow, the decision of the Commissioner is **REVERSED and REMANDED.**

## II.    STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable

person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

## III.   ISSUES AND ANALYSIS

**A.     Failure to discuss all medical impairments and records**

Plaintiff contends the ALJ committed reversible error in finding she had the RFC to perform unskilled simple and routine tasks on a sustained basis (R. 17), without properly weighing all the evidence of her mental health impairments including: 1) Dr. Merriweather's diagnosis of schizophrenia; 2) Dr. Charneco's diagnosis of major depressive syndrome, with findings of psychotic symptoms, including hallucinations and paranoia; and 3) Park Place's diagnosis of bipolar disorder with psychotic features.  Doc. 19 at 10.

The Commissioner argues that the ALJ adequately discussed the pertinent treatment notes in the record, since she is not required to discuss every piece of evidence, and a mere diagnosis does not say anything about Plaintiff's limitations.  The Commissioner argues that the ALJ is not required to discuss a "diagnosis" of a mental impairment for its own sake because a diagnosis alone provides no insight into the severity of a claimant's impairments. Thus, the Commissioner argues, the ALJ adequately considered Plaintiff's mental impairments. The Commissioner also argues that the ALJ recognized Plaintiff had mental impairments at step two (R. 12), considered whether those impairments met or equaled a Listing at step three (R. 12), and included limitations arising from Plaintiff's difficulties in social functioning and concentration, persistence, and pace in the RFC finding. R. 14.  The Commissioner contends that the ALJ accounted for Plaintiff's mental impairment by finding that, although she retained the RFC to perform a reduced range of light work, she could have no more than superficial communication with coworkers, supervisors, and the public; she could perform only tasks involving one to five steps and which could be learned through a simple job demonstration or within 30 days; and she could only engage in tasks performed generally the same way or in a similar manner each time. R. 13-14.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*,

125 F.3d 1436,1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

Plaintiff argues that her mental health treatment records show a consistent picture of an individual who experiences hallucinations, with a long-standing history of suicidal ideation and/or attempts, as well as severe bipolar outbursts. Doc. 19 at 12. Plaintiff argues that the ALJ erred in not weighing all the evidence, and in relying on selective medical records. Doc. 19 at 10 (citing *Caulder v. Bowen*, 791 F.2d 872, 880 (11th Cir. 1986) (finding that the ALJ is required to articulate his reasons for "giving no weight to the diagnoses") and *Jackson v. Astrue*, Case No. 8:06-CV-1631T26TBM, 2007 WL 2428815 (M.D. Fla. Aug 17, 2007) (finding that it appeared the ALJ improperly selectively relied on certain aspects of the record to conclude plaintiff could perform only routine, repetitive tasks)). Plaintiff contends that the ALJ's decision makes no reference to Dr. Charneko's findings at all and makes only passing reference to Park Place's findings, without addressing the repeated diagnosis of bipolar disorder with psychotic features, including hallucinations. R. 15.

Plaintiff's medical records show that she was admitted to the Osceola Regional Medical Center for one week in August 2009 with "an altered mental status of unknown etiology" and auditory

hallucinations. R. 341-43, 460-462. A psychological consult revealed methadone dependence and problems in Plaintiff's social environment. R. 462. When she became violent in her room, she was involuntarily committed under Florida's Baker Act, Fla.Stat. §§ 394.451-394.4789. R. 354, 462. The Commissioner argues that there is no evidence this episode affected Plaintiff for at least 12 months[1] and that treatment notes from July 2010 show Plaintiff had normal motor functioning and sensation and normal mood and affect. R. 387. Thus, the Commissioner argues, an isolated incident of "altered mental status" cannot support Plaintiff's application for benefits. Doc. 20 at 6 (citing 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. §§ 416.905(a), 416.909).

The Commissioner's arguments are not well-taken given Plaintiff's documented and lengthy history of mental health impairment issues. In August and September 2010, Dr. Charneco diagnosed Ms. Parrillo with psychotic symptoms, including hallucinations, and anxiety; and she was believed to be a danger to herself, with suicidal ideation and suicidal plan. R. 407-13. Dr. Charneco found Plaintiff had paranoia, disorientation and visual/auditory hallucinations. R. 413. In her two visits to Dr. Charneco in September, 2010, Dr. Charneco diagnosed Plaintiff with major depressive syndrome, finding that Plaintiff also had limited judgment. R. 409-10.

Plaintiff also argues that the ALJ erred in considering the records of Dr. Merriwether and Park Place that Plaintiff suffers from significant, ongoing mental impairments, including schizophrenia (R. 536). Plaintiff received treatment over a two-year period from a primary care physician, Dr. Merriwether, at Chappel Family Practice from September 15, 2009 to August 1, 2011. Dr. Merriweather repeatedly diagnosed Plaintiff with psychiatric problems, including anxiety and depression; however, on one occasion on July 9, 2010, Dr. Merriweather diagnosed Plaintiff with

---

[1]The Commissioner also argues that SSA need only develop medical evidence for 12 months preceding the application. See 20 C.F.R. § 416.912(d), and since Plaintiff's visit to Osceola Regional predated her May 12, 2011 application by 21 months (R. 152-60, 341), the ALJ did not need to consider it.

schizophrenia (although he did not explain the change in the diagnosis from previous months). R. 528-546, 576-81; R. 536.

The Commissioner argues the ALJ was not required to comment on every diagnosis from Chappel Family Practice and Park Place, and the ALJ adequately discussed the Park Place treatment notes and found they did not support Plaintiff's complaints of hallucinations. The Commissioner also argues that the ALJ was not required to discuss Dr. Cherneco's treatment notes because an ALJ is not required to address every piece of evidence in the record. To the extent the ALJ may have erred in not discussing these notes, the Commissioner argues, such error was harmless because Plaintiff's total treatment with Dr. Charneco involved only three visits over a two-month period and "such a limited treatment relationship militates against giving any appreciable weight to the notes." Doc. 20 at 8. The Commissioner additionally contends that the treatment notes do not express any limitations greater than those found in the RFC finding and mostly consist of Plaintiff's subjective complaints, which the ALJ found were "not entirely" credible. R. 16.

The Eleventh Circuit, in *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178–79 (11th Cir. Jan. 24, 2011), held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Id.* (citing 20 CRF §§ 404.1527(a)(2), 416.927(a)(2)*; Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1986)). Applied here, the treatment notes pointed out by Plaintiff are statements from her physicians reflecting judgments about Plaintiff's impairments that the ALJ should have addressed.

As in other cases before this Court[2], the Commissioner insists on citing to a pre-*Winschel* case, *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005), for the proposition that "the ALJ is under no obligation to discuss every piece of evidence in the Record." Doc. 20 at 6 (citing also *Garfield v. Schweiker*, 732 F.2d 605, 609 (7th Cir. 1984) ("written evaluation of every piece of testimony and evidence submitted is not required" and "it is often impracticable and fruitless for every document to be discussed separately")). However, that is no longer the standard with regard to treatment notes from treating physicians that reflect judgments about Plaintiff's impairments, at least in this circuit.

The Eleventh Circuit's opinion in *Winschel* was very critical of the ALJ's lack of discussion of relevant treatment notes:

> In this case, the ALJ referenced Winschel's treating physician only once, and that reference merely noted that Winschel saw the doctor monthly. The ALJ did not mention the treating physician's medical opinion, let alone give it "considerable weight." Likewise, the ALJ did not discuss pertinent elements of the examining physician's medical opinion, and the ALJ's conclusions suggest that those elements were not considered. It is possible that the ALJ considered and rejected these two medical opinions, but without clearly articulated grounds for such a rejection, we cannot determine whether the ALJ's conclusions were rational and supported by substantial evidence. Accordingly, we reverse. On remand, the ALJ must explicitly consider and explain the weight accorded to the medical opinion evidence.

*Winschel*, 631 F.3d at 1179.

Dr. Charneco's opinion is entitled to controlling weight as long as it is supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). "Generally, treating physicians' opinions are given more weight than non-treating physicians; and the opinions of specialists are given more weight on issues within the area of expertise than those of nonspecialists." *Baker v. Astrue*, 2011 WL 899311, *7 (M.D. Fla. Mar. 14, 2011) (citing *McNamee v. Soc. Sec.*

---

[2]*See Mieles v. Commissioner of Social Security*, Case No. 6:13-cv-91-Orl-DAB (Jan. 10, 2014)

*Admin.*, 162 F. Appx. 919, 923 (11th Cir. Jan. 31, 2006) (unpublished); 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5) (the following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "Length of the treatment relationship and the frequency of examination"; (2) the "Nature and extent of treatment relationship"; (3) "Supportability"; (4) "Consistency" with other medical evidence in the record; and (5) "Specialization").

Here, the ALJ failed to discuss at all Dr. Charneco's treatment notes of Plaintiff's "suicidal ideation and plan"; limited judgment"; or psychotic symptoms including hallucinations, much less discuss any weight given to the treatment notes. R. 407-13. The ALJ does not discuss Dr. Merriwether's treatment notes to the extent he treated Plaintiff for depression, although he is not a specialist in psychiatry and his diagnosis would be given less weight than Dr. Charneco's. Accordingly, the ALJ's failure to discuss Dr. Charneco's diagnosis of major depressive syndrome with limited judgment and Dr. Merriwether's treatment notes of anxiety, depression, and schizophrenia was errorroneous, and as such the ALJ's opinion was not based on substantial evidence.

The ALJ did comment on the treatment notes from the other mental health provider, Park Place Behavioral Health, who diagnosed Plaintiff with bipolar disorder:

> The claimant also testified that her mental illness has gotten much worse despite treatment with counseling and administration of medication. She was referred to Park Place Behavioral Healthcare for treatment of her anger outbursts (Exhibits 12F, 14F, and 16F). Medical records document that the claimant had anger outburst and was throwing objects at others, breaking items and experiencing irritability (Exhibit 12F/3). However, this resulted in a one day admission and the claimant was discharged with medication (Exhibit 12F).
>
> Mental health treatment notes reveal that claimant treatment [sic] with Park Place complaining of hallucinations on August 30, 2011(Exhibit14F/10). Her initial evaluation statements also reveal that she isolated herself socially and had poor concentration (Exhibit 14F/10). On October 13, 2011, two months after treatment with medication the claimant reported no hallucinations (Exhibit 16F). Her counselors noted that her attitude improved and her symptoms subsided with medication, however, her motivation for treatment was to get a prescription for Xanax (Exhibit 16F/4,5,6, and 7).

-10-

R. 14-15. The Commissioner argues the ALJ discussed the relevant objective findings in the Park Place treatment notes (R. 15), but ultimately found that Plaintiff's complaints of hallucinations disappeared within two months of beginning treatment.

Plaintiff has a long history of bipolar disorder and depression, with documented outbursts, including those noted by Park Place who treated Plaintiff for anger and manic outbursts. R. 602. As Plaintiff points out, the ALJ made only passing reference to Park Place's findings (set forth above) in her decision, and did not discuss Park Place's repeated diagnoses of bipolar disorder with *psychotic features* – gross distortion of a person's mental capacity to recognize reality[3] – at multiple treatment sessions in 2011 and 2012. R. 584, 597, 602, 609, 632, 635, 639. Plaintiff argues that the ALJ erred in failing to address *all* of Plaintiff's mental problems, including those specified in her more recent medical records. At Park Place she was originally diagnosed with Bipolar I Disorder with aggressive behavior and manic episodes; at the next five Park Place appointments, she was diagnosed with "Bipolar I Disorder, Most Recent Episode Depressed, with Psychotic Features." R. 589, 597, 602, 629, 632, 633. The notes from the last two visits to Park Place indicate Plaintiff was "angry", her speech "incoherent" and "slow," her cognitive performance (thought process) "low," and, despite the ALJ's finding that she had no recent hallucinations, Plaintiff continued to be psychotic. R. 635, 639. Plaintiff testified at the hearing that she continues to have problems with visual and auditory hallucinations. R. 33. Plaintiff also contends that the ALJ's finding that Plaintiff had the ability to take the bus, does not negate given her history of auditory hallucinations, suicidal ideation, bipolar outbursts of anger and mania, and "incoherent" speech to show she has sufficient concentration to maintain full-time work.

---

[3]*See* "psychosis" in STEDMAN'S MEDICAL DICTIONARY (28th ed. 2006).

-11-

Here, the ALJ failed to adequately discuss – or explain why she discounted – Park Place's diagnoses of "Bipolar I Disorder with Aggressive Behavior and Manic Episodes" and "Bipolar Disorder Most Recent Episode Depressed with Psychotic Features" (R. 584, 597, 602, 609, 632), and, during the last two visits in 2012, that Plaintiff was "angry", "incoherent", her appearance "unkempt" and cognitive performance (thought process control) "low." R. 635, 639. As Plaintiff argues, her continued anger/incoherence problems do not support a finding that Plaintiff's "symptoms subsided with medication" – if anything, it appears that she became more unstable as the mental health provider insisted that she taper off Xanax, insisting it was the only medication "that helped her." R. 639. Moreover, the ALJ failed to recognize that Plaintiff continued to be diagnosed with "psychotic features" to her bipolar disorder, even with treatment. As such, the ALJ's decision was not based on substantial evidence and will be reversed and remanded.

### B. Consultative examination

Plaintiff claims that the ALJ should not have found her capable of performing work contrary to the findings of Dr. Jean, the consultative examining psychologist, who found she had "significant" functional limitations. The ALJ instead relied on the opinion of the state agency reviewing psychologist Dr. Green who found Plaintiff could complete simple, routine tasks. As the Court noted above, the opinions of examining physicians are generally given more weight than those of non-examining physicians. *See McNamee v. Soc. Sec. Admin.*, 162 F. App'x 919, 923 (11th Cir. Jan. 31, 2006) (unpublished) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)).

Dr. Jean examined Plaintiff on June 27, 2011. R. 562. Dr. Jean diagnosed Plaintiff with I) Major Depressive Disorder, Recurrent; and ii) Severe Generalized Anxiety Disorder. R. 563. He found Plaintiff's functional ability was "significantly" impaired based on her episodes of depression and anxiety. R. 563. Dr. Green, the state agency reviewing physician opined Plaintiff suffered from I) affective disorder, severe; ii) anxiety disorders, severe; and iii) substance addiction disorders,

non-severe. R. 73. Dr. Green found Plaintiff "would be able to complete simple tasks/work procedures and make work decisions, but may have difficulty carrying out detailed instructions". R. 78.

Plaintiff argues the ALJ erred in finding that Plaintiff was capable of performing unskilled simple and routine tasks on a sustained basis, giving Dr. Green's opinion "significant weight." R. 17. 17. Plaintiff challenges the qualifications of Pamela Green, Ph.D. since they are not set forth in the Record, and argues there is no competent substantial evidence to support her opinion that Plaintiff is capable of performing unskilled simple and routine tasks on a sustained basis. R. 79. Based on the Plaintiff's examination, Dr. Jean diagnosed her with Major Depressive Disorder, Recurrent, Severe Generalized Anxiety Disorder. R. 563. Dr. Jean found Plaintiff had functional ability that was significantly impaired, noting she had numerous symptoms indicative of psychosis, including auditory and visual hallucinations as well as paranoid ideation; and thought processes were tangential. R. 563. On remand, the ALJ will consider Dr. Jean's consultative opinion consistent with the Court's analysis set forth in Section A above.

### C. Issue of Remanding for Benefits

Plaintiff seeks to have the ALJ's decision remanded with instructions to award benefits or in the alternative a remand with instructions to the ALJ to fully address the opinions of treating and consulting sources in the records. Doc. 19 at 20. The Commissioner argues that, if the ALJ's decision is remanded, it should not be for an award of benefits and the appropriate remedy is to remand for further proceedings. Doc. 20 (citing *Foote v. Chater*, 67 F.3d 1553, 1561-63 (11th Cir. 1995) and 42 U.S.C. § 405(b)(1) (placing the responsibility of deciding whether a claimant is disabled with the Commissioner)).

The Commissioner argues that remand for an award of benefits is appropriate only where the Commissioner "has already considered the essential evidence and it is clear that the cumulative effect

-13-

of the evidence establishes disability without any doubt." *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). As the Eleventh Circuit has noted, the temptation to "cut through delay by evaluating the administrative record itself and applying the correct legal standard . . . must be resisted" as "it would be an affront to the administrative process if courts were to engage in direct fact finding in these Social Security disability cases." *McDaniel v. Bowen*, 800 F.2d 1026, 1032 (11th Cir. 1986). In this case, the Commissioner argues, the appropriate remedy is remand to the ALJ for further consideration of the evidence highlighted by the Court. Plaintiff has not set forth any argument or citation to authority in support of a remand for benefits (Doc. 19 at 20). Here, the case will be remanded to the ALJ to determine Plaintiff's RFC consistent with the Court's analysis as set forth above.

## IV.   CONCLUSION

For the reasons set forth above, the ALJ's decision is not consistent with the requirements of law and is not supported by substantial evidence. Accordingly, the Court **REVERSES and REMANDS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on March 19, 2014.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record